NATIONAL REFRACTORIES COMPANY, INC. *vs.* BAY STATE BUILDERS SUPPLY CO., INC. & another.

Middlesex.     May 14, 1956. — September 13, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, & WILLIAMS, JJ.

*Corporation,* Director's liability.  *Payment.  Bills and Notes,* Renewal, Note as payment.

A director and stockholder of a business corporation was liable as a director for its debts under G. L. (Ter. Ed.) c. 156, § 37, Second, through assent to a loan by the corporation to his son, also a director and stockholder, where it appeared that an agreement was made between the father and others whereby the corporation was to make the loan and the son was to use the money lent to pay a preëxisting indebtedness of his to his father, and that the loan was accordingly voted at a stockholders' meeting and the transaction was consummated, although

it further appeared that at a directors' meeting following and on the same day as the stockholders' meeting no formal action relative to the loan was taken, that it was also voted at the stockholders' meeting to accept the father's resignation as a director effective the next day, and that the consummation of the transaction was not until the next day. [544–545]

The fact that creditors of a corporation became such after a director had severed all connections with the corporation did not preclude liability on his part to them under G. L. (Ter. Ed.) c. 156, § 37, Second, through his assenting to a certain loan while he was a director. [545]

With respect to the liability under G. L. (Ter. Ed.) c. 156, § 37, Second, of a director of a business corporation which with his assent made a loan to one who was a stockholder and director of the corporation and who gave it his promissory note for the amount of the loan, a conclusion was proper that there had not been a "repayment" of the loan by renewal notes given by the borrower to the corporation. [545–546]

BILL IN EQUITY, filed in the Superior Court on October 22, 1953.

The suit was heard by *Sullivan*, J., who made findings of material facts. The defendant Henry A. Hale appealed from the final decree. The evidence was reported.

*Walter H. McLaughlin*, (*Arthur M. Gilman* with him,) for the defendant Hale.

*Stuart Macmillan*, (*Samuel F. Clapp* with him,) for the plaintiff.

RONAN, J. The plaintiff brought this suit under G. L. (Ter. Ed.) c. 156, §§ 37, 38, in its own behalf and in behalf of ten other creditors, and was joined by one intervener, all creditors of the defendant corporation by virtue of contracts made with the corporation subsequent to June 6, 1951, the date the defendant Hale claims to have resigned as a director of the corporation. All requirements of §§ 37, 38, prior to bringing suit have been complied with by them. The judge found in favor of all twelve creditors with interest from August 24, 1953. A final decree in accordance therewith was entered.

Henry A. Hale, the individual defendant, in 1947 purchased two hundred shares of the defendant corporation, being all the outstanding shares of its capital stock. Soon after acquiring the stock, he sold one half to his son Robert taking in payment his note for $22,500. The defendant

334 Mass. 541                                            543

National Refractories Co. Inc. *v*. Bay State Builders Supply Co. Inc.

Hale and his son continued as stockholders during the times in question and they constituted a majority of the directors. Relations between the father and son having become unpleasant, the father brought a bill to reach and apply the son's interest in the stock in payment of the note.

Shortly prior to June 6, 1951, negotiations were held between Hale and his son or their attorneys looking toward a settlement of their differences. It was agreed that the defendant corporation should purchase the defendant Hale's stock for $47,500 and should make a loan of $22,500 to Robert A. Hale in order to enable him to pay his note held by his father.

In the late afternoon of June 6, 1951, a meeting of all the stockholders was held at the office of the attorney for the defendant Hale. It was voted at that meeting that the corporation purchase from Henry A. Hale all his stock, being one hundred shares, for $47,500; that it lend Robert A. Hale $22,500; that it sell its real estate in Cambridge for $30,000; and that it accept the resignation of Henry A. Hale as a director effective June 7, 1951. This meeting was followed by a meeting of the directors. At the beginning of the meeting Henry A. Hale presented his resignation as president. It was accepted and his son Robert was elected to succeed him. It was also voted to sell the Cambridge property for $30,000. No formal action relative to making a loan to Robert A. Hale appears to have been taken at this meeting of the directors.

Negotiations for the withdrawal of Henry A. Hale had started in May, 1951. Hale had commenced a suit in equity to reach and apply the son's interest in the stock of the corporation in satisfaction of the note which the son had given for the stock which he purchased from his father. In the bill in equity filed in that case by the father on January 8, 1948, it was alleged that the son had no property other than the stock. Before the meetings on June 6, 1951, the parties had reached an agreement. Hale was to receive $47,500 for his stock and his son a loan of $22,500 from the corporation to enable him to pay his note. The parties

knew in advance what was to take place at the meetings. The corporation on June 4, 1951, procured a certified check for $33,000 and on June 6, 1951, a like check for $7,000. Both checks were payable to Henry A. Hale and were given to his attorney on June 6, 1951. The purchasers of the property attended the meetings with checks aggregating $30,000. They received the deed on June 6, 1951, after the meetings. One of the checks was not certified but arrangements were made to have it certified on the next morning. The attorney for Hale agreed to hold the checks until he heard that the title continued clear and the deed was recorded. The attorney for the purchasers so advised the attorney for Hale on the morning of June 7, 1951, and the deed was recorded just before noon on June 7, 1951. Robert A. Hale gave his note to the corporation for $22,500 on June 7, 1951, although it was dated June 6, 1951.

The principal contention of the defendant Hale is that he was not a director when the corporation was authorized to lend his son $22,500 with which to pay his indebtedness to his father.

The statute upon which the instant bill is based, so far as material, provides that "The directors of every corporation shall be jointly and severally liable for the debts and contracts of the corporation in the following cases: . . . Second. For debts contracted between the time of making or assenting to a loan to a stockholder or director and the time of its repayment, to the extent of such loan." G. L. (Ter. Ed.) c. 156, § 37. The purpose of the statute is to protect the creditors of the corporation and to prevent officers of the corporation from sharing in corporate funds which should go to the creditors. Henry A. Hale was the sole beneficiary of the loan by the corporation to his son. It was an integral part of the transaction to which the defendant Hale assented formally as a stockholder. He did not vote as a director to put through the plan. There was no vote on the loan at the directors' meeting.

The statute (§ 37) does not require a formal vote by a director in declaring certain dividends or in making loans

334 Mass. 541                                        545

National Refractories Co. Inc. *v.* Bay State Builders Supply Co. Inc.

to a stockholder or director. It is enough if he assented to declaring the dividend or making the loan. A director knowing in advance that certain matters violative of § 37 are to come up at a meeting cannot circumvent the statutory remedy by staying away from the meeting and thus avoid voting but receive the personal benefit of a dividend or loan. In *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, with reference to the liability of a director who was absent at a meeting at which a liquidating dividend was voted but who had knowledge beforehand that such vote was to be taken and as treasurer made the distribution, it was said at page 59, "Perry M. Shepard, as treasurer, drew the checks effecting the distribution and they were accepted by him and his brother [also a director] with knowledge of all the facts. It is plain that these acts constituted an assent by the defendants to the distribution." *Old Colony Boot & Shoe Co.* v. *Parker-Sampson-Adams Co.* 183 Mass. 557, 562. *Pennsylvania Iron Works Co.* v. *Mackenzie,* 190 Mass. 61, 63. *Burke* v. *Marlboro Awning Co.* 330 Mass. 294, 301.

Henry A. Hale was an active participant in a plan by which the preëxisting indebtedness of his son which was apparently uncollectible was paid by the corporation. Corporate funds cannot be used for such a purpose. Officers of a corporation cannot be permitted to use corporate funds for their own personal benefit in utter disregard of the creditors and are obligated to refund the wrongfully acquired property to the corporation or to its creditors. *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280. *Barishefsky* v. *Cohen,* 299 Mass. 360. *Moseley* v. *Briggs Realty Co.* 320 Mass. 278.

The fact that the plaintiff creditors and the intervener did not become creditors until after Hale had severed all connections with the corporation is immaterial. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 60.

Robert A. Hale paid only $500 on his note to the corporation and has since given renewal notes. The principal amounting to $22,000 has never been paid. Whether his

indebtedness was paid by the renewal notes or still continues was a question of fact. Section 37 imposing liability upon directors for assenting to the making of a loan to another director would have little practical benefit to a creditor if the loan should be held to be paid by the taking of a renewal note from one not shown to be of sufficient financial ability. By the terms of the statute, G. L. (Ter. Ed.) c. 156, § 37, the assenting director is held liable for debts and contracts incurred up to the time of "repayment." The note given by the son was in legal effect secured by the statutory liability of the defendant Hale. See *Freedman* v. *Peoples National Bank*, 291 Mass. 168, 171; *Agricultural National Bank* v. *Brennan*, 295 Mass. 325, 329–330; *First National Bank* v. *McGowan*, 296 Mass. 101, 106–107.

The awards to the creditors in the final decree amounted to $23,101.66, including interest. These amounts should be brought down to date and execution should issue to each creditor for the proportion of $22,000 that its claim bears to the total claims allowed. The plaintiff is to have costs of this appeal.

*So ordered.*