CHARLES SCHWARTZ & another,[1] trustees, *vs.* MARTIN SCHULTZ. No. 87-29. January 22, 1988. *Loan. Interest. Contract,* Construction of contract, What constitutes. *Evidence,* Extrinsic affecting writing. *Practice, Civil,* Findings by judge, New trial.

This dispute involves the amount due on three promissory notes (secured by real estate mortgages) given by the plaintiffs to the defendant. The precise issue is whether the notes called for interest at the rate of nine percent over a ten-year period, that is, a flat nine percent added to the sum borrowed with the total divided into 120 monthly payments (as contended by the plaintiffs), or for interest at a rate of nine percent per annum, that is, nine percent each year on the declining principal balance (as contended by the defendant). A judge of the Superior Court sitting without a jury heard

---

[1] Louis S. Gainor, who, with the plaintiff Charles Schwartz, constitute the trustees of Parkvale Realty Trust.

the case and found for the plaintiffs. A judgment was entered declaring that the promissory notes had been paid in full and ordering the discharge of the mortgages securing them. The defendant has appealed from the judgment and from the order denying his motion for a new trial. We affirm.

1. The three promissory notes were executed by the plaintiffs on May 7, 1974. Each typewritten note is for a term of ten years and is payable in monthly installments. The monthly sums to be paid are delineated in dollar amounts. As to interest, two of the notes provide for repayment of the sum borrowed "with interest thereon at the rate of 9%," while the third note provides for repayment of principal "with interest thereon at the rate of nine per cent." The words "per annum," "annual," or "annually" are not used in connection with the interest rate.

The notes each contain a number of provisions protecting the defendant lender if certain contingencies occur, including the payment of costs, expenses and attorney's fees in the event of default in the payments, and a requirement of "interest on all amounts not paid when due . . . at the rate of one per cent per month until paid in full." The notes, although they contain standard language, are not on printed forms but are on three identical, typewritten forms, six pages in length, prepared by the defendant. The forms contain spaces where individual dollar amounts and interest rates were filled in. The space for the interest rate is eighteen characters long, with the result that a large blank space appears on the two forms on which "9%" is typed in, and a smaller blank space appears on the form on which "nine per cent" is typed in.

Even though blank spaces appear on each note after the nine-percent term, the judge could initially conclude that the three notes are on their face complete instruments and constitute integrated agreements. See, e.g., *Caputo* v. *Continental Constr. Corp.*, 340 Mass. 15, 18 (1959); *Carlo Bianchi & Co.* v. *Builders' Equip. & Supplies Co.*, 347 Mass. 636, 643 (1964); *Trustees of Tufts College* v. *Parlane Sportswear Co.*, 4 Mass. App. Ct. 783, 784 (1976). From the face of the notes, the judge might have been able reasonably to conclude that the notes were intended to provide for nine-percent interest over a ten-year period, as the plaintiffs maintain, because (a) each note either in words ("nine percent") or in numbers ("9%") calls only for that rate of interest; (b) the total of all the payments on the three notes over their ten-year terms closely approximates the sum borrowed plus nine percent, that is nine percent over a ten-year period; and (c) there is an express provision in each note for annual interest (at the rate of one percent per month or twelve percent per year) for payments that are in default, an indication that the drafter of the notes (the defendant) knew that interest payable periodically could be expressed as such. Thus, the judge might conclude that the debts due on the notes, both principal and interest, were to be satisfied by the plaintiffs' making the 120 monthly payments specified in each note.[2]

---

[2] The provision in the notes that the payments are to be applied first to the interest then due and the balance to principal could be considered as suggestive of a larger

Because blank spaces appear after the nine-percent term on each note and because each note contains clauses allocating principal and interest commonly used when interest is amortized, the judge took evidence pertaining to the circumstances of the execution of the notes in order to ascertain whether there was any validity to the defendant's argument that the notes did not accurately express the parties' agreement because they were ambiguous on an essential point. See *Robert Indus., Inc.* v. *Spence,* 362 Mass. 751, 753-754 (1973). The judge then made findings of fact. Those findings indicate what evidence the judge found credible, and we accept them. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974); *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank,* 395 Mass. 614, 621-622, 623-624 (1985). Based on the evidence presented and the notes themselves, the judge reached the legal conclusion that the interest rate intended by the parties was nine percent over a ten-year period.

The judge's findings disclose the following. The notes and mortgages were given in part payment of the purchase price of rental properties and as security for so much of the purchase price as the seller financed. The properties were vacant and had numerous defects that constituted serious violations of various health and safety laws and codes which the Housing Court for the city of Boston had ordered the defendant to remedy. Consequently, the defendant was under considerable pressure to sell the rental properties. The plaintiffs were willing to buy the properties and to undertake their repair and rehabilitation, provided the price for the properties, both in terms of cash down and amount of financing, was acceptable. The parties were experienced businessmen represented by counsel. The notes were the product of an eleven-hour closing at which all aspects of the sale were extensively discussed, analyzed, and, where needed, negotiated.[3] They were prepared by the defendant's counsel, who testified that he included only the provisions that the defendant wanted, and that to the best of his recollection the agreed interest rate was nine percent over a ten-year period. No provisions were included in the notes for "per annum" interest or for balloon payments at the conclusion of their ten-year terms. The defendant read the notes carefully several times before approving and signing them. Further, the total amount of monthly payments on the three notes was calculated to approximate the monthly income the defendant wanted from the deal over a ten-year period. Finally, there was testimony from the defendant's expert from which the judge found that, if, as the defendant maintained, there was to be a balloon payment in the amount of $375,000 due at the end of the

---

interest obligation in keeping with the defendant's construction of the notes. The provision, however, is not inconsistent with the plaintiffs' construction. According to that construction, the interest was spread over the ten-year term, a fact which would include in each monthly payment a small amount of interest.

[3] The purchase and sale agreement left room for negotiation of amounts finally due by providing that the amount expressed in dollars for the notes and the mortgages securing them was to be considered "approximate."

ten-year term, each note would have contained some words clearly expressing such an obligation or "a date . . . when any unpaid balance should be paid in full." There is no such provision in any of the notes, and the judge was entitled to construe its absence against the defendant.

We have considered the arguments of the defendant. We do not think applicable here the out-of-State decisions he relies on which hold that the expression of interest in a promissory note as a percent without more means percent per annum as matter of law. Most of the cases were decided in the nineteenth century when the terms of loans were more rigid and when such instruments were crudely written by borrowers and lenders acting without the advice of an attorney. This transaction had instruments of length and complexity, which were prepared by an attorney after prolonged and very difficult negotiations. Nor are we persuaded by the argument that no reasonable businessman would agree in 1974 to an interest rate which amounted to less than one percent a year. As an abstract matter, this argument may have force, but it must yield, on the facts found by the judge, to the conclusion that the parties formulated their own arrangement to ease the defendant out of the bleak situation he faced on rundown properties. Although arguments can be formulated which support the defendant's construction of the notes, the judge's decision is plausible, and we accept it. See *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank,* 395 Mass. at 623-624.

2. The defendant's motion for new trial was properly denied within the trial judge's discretion. *Kaltsas* v. *Duralite Co.,* 4 Mass. App. Ct. 634, 639 (1976). The judge could reasonably find with respect to the defendant's two "newly discovered" witnesses that no diligent effort had been made to locate the first witness and that the second witness was known and available to the defendant because both the second witness and the defendant had participated in the closing. See *Graci* v. *Damon,* 6 Mass. App. Ct. 160, 166, *S.C.,* 376 Mass. 931 (1978). The rent control document offered as the third item of "newly discovered" evidence was in defense counsel's possession during the trial and sheds little light on the issue of the proper interest rate. The result in the case does not constitute a manifest injustice. See *Kuhlmann* v. *Hy-Crest Ranches, Inc.,* 4 Mass. App. Ct. 542, 547 (1976); *Kord* v. *Baystate Med. Center, Inc.,* 13 Mass. App. Ct. 909, 910 (1982). Compare *Clapp* v. *Haynes,* 11 Mass. App. Ct. 895, 896-897 (1980).

3. The judge's ultimate finding that the notes had been paid in full implicitly determines that no late or other charges are due. Although there was conflicting evidence on that point, it appears that the judge accepted the plaintiffs' evidence. We therefore, reject the defendant's argument that the issue was overlooked.

*Order denying motion for*
*new trial affirmed.*

*Judgment affirmed.*

Herbert Lemelman & Murray P. Reiser for the defendant.
Steven E. Bauman for the plaintiffs.